UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | | |
|---|---|---|---|
| ASSOCIATION OF CONVENIENCE STORE RETAILERS, INC., SOUTH TEXAS MERCHANTS ASSOCIATION COOPERATIVE, INC., and TEXAS FOOD AND FUEL ASSOCIATION, INC. | § § § § § § § § § | CAUSE NO. | 18-1321 |
| | § | | |
| V. | § § | JURY | |
| | § § | | |
| CITY OF SAN ANTONIO | § § | | |

## ORIGINAL COMPLAINT
## AND REQUEST FOR DECLARATORY JUDGMENT

**TO THE HONORABLE JUDGE OF SAID COURT:**

**COMES NOW**, the ASSOCIATION OF CONVENIENCE STORE RETAILERS, INC., SOUTH TEXAS MERCHANTS ASSOCIATION COOPERATIVE, INC., and the TEXAS FOOD AND FUEL ASSOCIATION, INC., and files this their Original Complaint and Request for Declaratory Judgment against the City of San Antonio, and in support thereof would show the Court as follows:

## I.
## Introduction

1.      This is a civil action concerning the passage of City Ordinance 2018-01-11-0001. Plaintiff brings its first cause of action pursuant to 42 U.S.C.A. §1983 to redress the deprivation, under the color of law, of the rights, guaranteed by the Constitution of the United States. Plaintiffs

bring this cause of action on behalf of its members. In addition, Plaintiffs seek a declaration that substance, practices and customs of the Defendant and the Defendant's practices and procedures utilized in the course of approval and passage of Ordinance 2018-01-11-0001, constituted an abuse of Defendant's police power, and hence the Ordinance is void.

**II.**

**PARTIES**

2.      Plaintiff, the ASSOCIATION OF CONVENIENCE STORE RETAILERS, INC. is a Texas Non-Profit Corporation, whose registered agent is M. Saleem Rana, and is represented by the Glenny Law Firm, Clint M. Glenny, Attorney at Law, located at 3123 N.W. Loop 410, San Antonio, Texas 78230.

3.      Plaintiff, the SOUTH TEXAS MERCHANTS ASSOCIATION COOPERATIVE, INC.,  is a Texas Non-Profit Corporation, whose registered agent is Mustak Ali, and is represented by the Glenny Law Firm, Clint M. Glenny, Attorney at Law, located at 3123 N.W. Loop 410, San Antonio, Texas  78230.

4.      Plaintiff, the TEXAS FOOD AND FUEL ASSOCIATION, INC., is a Texas Non-Profit Corporation, whose registered agent is Chris Newton, and is represented by the Glenny Law Firm, Clint M. Glenny, Attorney at Law, located at 3123 N.W. Loop 410, San Antonio, Texas 78230.

5.      Defendant, the City of San Antonio, is a municipality duly organized and existing under the laws of the State of Texas.  San Antonio is located in South Central Texas.  It is the County Seat of Bexar County, which is located within the Western District of Texas.

6.      Defendant may be served with Service of Process by and through the City Clerk, Leticia M. Vacek, 100 Military Plaza, San Antonio, Texas 78205.

**III.**

**JURISDICTION**

7.      This Court  has federal-question jurisdiction, as Plaintiff's causes of action arise under the Constitution, laws, or treaties of the United States.  U.S. Const. art.3, Section  2;  28 U.S.C. § 1331.

**IV.**

**VENUE**

8.      Venue is proper in the Western District of Texas, as a substantial part of the events or omissions giving rise to the claim occurred within the Western District.  Venue is also proper within the Western District of Texas because Defendant is a municipality located within the Western District.

**V.**

**GENERAL FACTS**

9.      On or about January 11, 2018, during an A Session, the City Council of San Antonio ("the City") addressed "Smoking," a proposed amendment to Chapter 36 of the City Code.

10.      The Applicant for the "Smoking" ordinance was the Director of San Antonio Metropolitan Health District, Dr. Colleen M. Bridger ("Dr. Bridger").

11.      Dr. Bridger proposed amending Chapter 36-5 of the City Code to raise the Minimum Legal Sales Age (MLSA) for tobacco purchases from eighteen (18) to twenty-one (21) years old.

12.      The materials presented to the City Council indicated the purpose of the ordinance was to delay the age of first tobacco use, subsequently reducing the risk of becoming a regular smoker.  The proposed ordinance was also intended to keep tobacco out of schools.

13.     Ultimately, the City Council voted in favor of the "Smoking" Ordinance 2018-01-11-0001. Ordinance 2018-01-11-0001is also known as the "Tobacco 21" or "T21."

14.     San Antonio was the first city in Texas to raise their MLSA to twenty-one (21) years of age for the purchase of tobacco products.

**VI.**
**<u>FACTS</u>**

15.     Plaintiffs' membership is comprised of hundreds of independent convenience store, small grocery store, and gas station owners. The vast majority of Plaintiffs' member entities are owned by individuals of Middle Eastern and Southeast Asian descent.

16.     On or about August 24, 2017, Dr. Bridger presented an "Overall State of the City's Health" presentation to the Community Health and Equity Committee. City Councilmember Ana Sandoval is the Chair of the Community Health and Equity Committee.  At that time, Dr. Bridger introduced the idea of adopting T21.

17.     On or about December 6, 2017, the San Antonio City Council itself addressed Tobacco 21 at a B Session meeting.

18.     Dr. Bridger proposed T21 to raise the MLSA of tobacco products within the City of San Antonio to twenty-one (21) years of age.

19.     Dr. Bridger proposed that the penalty to those that sold tobacco products to persons under the age of twenty-one (21) years old would be a misdemeanor crime punishable by a fine of up to five hundred dollars ($500).

20.     Likewise, Dr. Bridger proposed three possible suggestions for enforcement against individuals under the age of twenty-one (21) years of age for the purchase, use, and possession

(PUP) of tobacco products within City limits: (1) no enforcement at all; (2) requiring mandatory smoking cessation classes; (3) or a maximum fine of $250.

21.     At that time, Dr. Bridger recommended that the penalty for individuals under the age of twenty-one (21) years of age for the purchase, use, and possession (PUP) of tobacco products within City limits should be the completion of a required smoking cessation class.

22.     As concerns the proposed enforcement of T21, Dr. Bridger explained San Antonio Metro Health would lead enforcement, not the San Antonio Police Department (SAPD).

23.     Dr. Bridger noted that SAPD currently enforces the State of Texas' MLSA of eighteen (18) years of age for the PUP of tobacco products within City limits, but noted it is not a priority for SAPD and would continue to not be a priority.

24.     Dr. Bridger explained that Metro Health would lead enforcement of the ordinance for retailers that had been issued food permits.

25.     She noted that approximately four hundred (400) of the one thousand six hundred retailers (1600) that sell tobacco products within the City limits have not been issued food permits. Accordingly, Metro Health would not lead enforcement or conduct compliance checks for those retailers.

26.     Dr. Bridger stated that Metro Health was partnered with the San Antonio Council on Alcohol and Drug Awareness (SACADA) and that they would assist with enforcement and compliance for stores that had not been issued a food permit.

27.     Councilmember Shirley Gonzales expressed concerns that T21 would not produce the desired effect considering the unique geographical layout of San Antonio. In particular, she expressed concern that T21 would not apply to the myriad of small surrounding and penetrating

municipalities.  Given same, any person between the ages of eighteen (18) and twenty (20) years of age could simply enter one of those municipalities and legally purchase tobacco products.

28.     Councilmember Manny Peláez likewise expressed concern with T21 over the disparate impact the ordinance would have on the Middle Eastern and Southeast Asian store owners.  He indicated his support for T21 would be conditioned upon assurances that it was health and education ordinance and less about law enforcement and fee collection.

29.     Councilmember Rebecca Viagran likewise expressed concern that T21 would not produce its intended effect given the proposed enforcement options. She indicated she was not comfortable moving forward with the ordinance.

30.     Councilmember John Courage indicated that he was in support of T21. In furtherance of same, he recounted that his mother and her boyfriend were smokers, that their house burned down as a result of smoking, and that his mother died a premature death from smoking.

31.     Councilmember Courage further stated the ordinance would only impact two percent (2%) of the retailers' tobacco sales and would not impact sales of other items such as gasoline, snacks, and drinks.

32.     Councilmember Roberto Trevino indicated that he was in support of T21. In doing so, he shared a story about how "Big League Chew" (bubble gum) made his brother want to try "Big Chief" (smokeless tobacco) and that it had made him sick.

33.     Councilmember Greg Brockhouse was arguably the ordinance's biggest opponent. He believed having no penalty for the PUP of tobacco products by persons between the ages of eighteen (18) and twenty (20) was "comical."

34.     Councilmember Rey Saldana likewise indicated his belief that the ordinance would not accomplish its intended effect if there was no penalty for the PUP of tobacco products by persons between the ages of eighteen (18) and twenty (20) years.

35.     Councilmember Clayton Perry was another opponent of T21. He argued that raising the MLSA to twenty-one (21) would only serve to drive tobacco products to the underground market.

36.     Councilmember Sandoval encouraged Dr. Bridger to work directly with the small business owners to make changes to the proposal to address the various concerns that had been raised.

37.     Following the B Session meeting, several small business owners in the San Antonio area, including many of Plaintiffs' members, requested meetings with the City Council members to discuss alternatives to the Ordinance.  The small business owners' requests went unanswered.

38.     Similarly, Dr. Bridger failed to work with small business owners to make changes to the proposed ordinance.  Indeed, her only attempt to involve the small business owners in the process was by calling a last-minute meeting at 5 o'clock pm the night before the City Council was to readdress the proposed ordinance at an A Session meeting.

39.     On or about January 11, 2018, the City Council readdressed T21 at an A Session meeting.

40.     At that meeting, Dr. Bridger again made a presentation to the City Council regarding the adoption of T21.

41.     Dr. Bridger indicated that the proposed ordinance would take effect on October 1, 2018.

42.     Dr. Bridger recommended that the ordinance include no penalty or enforcement provisions for the PUP of tobacco products by persons between the ages of eighteen (18) and twenty (20) years.

43.     At the A Session meeting, every City Councilmember agreed that the small business tobacco retailers were not communicated with appropriately in the creation and amendment of the proposed ordinance.

44.     Every City councilmember also expressed concern with the disparate impact the proposed ordinance would have on the small business tobacco retailers.

45.     City councilmembers again reiterated their concerns that the ordinance would be incapable of accomplishing its intended purpose given the lack of proposed penalty and enforcement provisions for the PUP of tobacco products by persons between the ages of eighteen (18) and twenty (20) years.

46.     Notwithstanding their concerns for the effectiveness or the admitted disparate impact the ordinance would have on the small business tobacco retailers, the City Council voted in favor for the Ordinance 9:2 at the A Session Meeting.

47.     T21 took effect in San Antonio on October 1, 2018.

48.     The enforcement of T21 is scheduled to commence on January 1, 2019.

## VII.
## CAUSE OF ACTION 42 U.S.C.A. § 1983

49.     Plaintiff incorporates by reference the allegations in sections I though VI above.

50.     Plaintiff brings its cause of action pursuant to 42 U.S.C.A. § 1983 to redress the

deprivation under color of law of rights, privileges and immunities guaranteed by the Constitution of the United States.

51.     By reason of the above-mentioned acts, omissions, and passage of Ordinance 2018-01-11-0001 and by means of its agents, the City of San Antonio acted under the color of law and deprived Plaintiffs' members equal protection under the laws of the United States of America.

52.     Specifically, Plaintiffs' members and other small business retailers of tobacco products within the City Limits are being discriminated against singled out pursuant to Ordinance 2018-01-11-0001. The "crime" as established by Ordinance 2018-01-11-0001 only subjects retailers to punishment though it was purportedly enacted for the health of persons between the ages of eighteen (18) to twenty (20). Without any enforcement provision for the PUP of tobacco products by persons aged eighteen (18) to twenty (20), Ordinance 2018-01-11-0001is clearly biased against one class for the benefit of another. The fines imposed by Ordinance 2018-01-11-0001 deprive the sellers of property (sales proceeds) without due process of law as it is to be enforced by Metro Health and the San Antonio Council on Alcohol and Drug Awareness, not the SAPD in their law enforcement capacity. Accordingly, Ordinance 2018-01-11-0001is fundamentally a commercial restriction on the sellers of tobacco products not sufficiently tied to a rational basis to protect the health of the purchasers as openly stated and designed.

53.     The above described acts and omissions of the City of San Antonio and its agents was done knowingly, intentionally, and maliciously for the purpose of oppression, denial of constitutionally protected rights of equal protection, and by reason of such acts and omissions, Plaintiffs and their members claim exemplary and punitive damages from the Defendant.

54.     By reason of the above-mentioned acts, omissions, and passage of Ordinance 2018-01-11-0001, by Defendant, Plaintiffs were required to and did retain an attorney to institute and

prosecute the instant civil action and render legal assistance to Plaintiffs so that Plaintiffs might vindicate the loss and impairment of its members' above mentioned rights; and by reason of such retention of legal counsel, Plaintiffs request payment by Defendant of a reasonable sum for attorney's fees pursuant to 42 U.S.C.A. § 1988.

## VIII.
## Remedy for Violation of 42 U.S.C.A. § 1983 – Declaratory Judgment

55.     Plaintiff incorporates by reference the allegations in paragraphs I through VI above.

56.     Plaintiffs seek a declaration that Ordinance 2018-01-11-0001 constitutes an impermissible arbitrary, capricious, and unreasonable exercise of Defendant's police power and is therefore void.

57.     Plaintiffs contend that the restrictions imposed by Ordinance 2018-01-11-0001 do not bear a reasonable relationship to a valid exercise of Defendant's police power. Plaintiffs likewise contend that Ordinance 2018-01-11-0001 is arbitrary, capricious, and unreasonable and bears no substantial relationship to the public safety and welfare. In particular, Plaintiffs contend that Ordinance 2018-01-11-0001 will not advance the City's stated interest in lowering the prevalence of smoking in persons between the ages of eighteen (18) and twenty (20). Likewise, Ordinance 2018-01-11-0001 has a disparate negative impact upon Plaintiffs' members and fails to include any penalty or enforcement provisions for the class of persons it intends to impact. For these reasons, Ordinance 2018-01-11-0001 fails to bear a rational relationship to the safety or welfare of the public.

58.     Specifically, while couched as a protection of the public health, the only burden created is upon Plaintiffs' membership and similarly situated retailers. Said burden does not provide any incentive for those whose health is supposedly at issue to change their behavior. When

the state of Texas exercised its' police power to enact the alcoholic beverage drinking age of twenty-one (21) in order to protect the public health, a concurrent penalty for the possession of alcohol by person under twenty-one (21) was established to influence and deter the actions of the class such law was designed to protect. While enforcement upon retailers served to limit supply, consequences for under age PUP of alcohol ensured compliance and effectuated the health inspired goals of the law. In the unique case of San Antonio, persons between the ages of eighteen (18) and twenty (20) can travel short distances (in some instances across the street) to another jurisdiction, return with City of San Antonio Limits, and smoke in front of a police officer without consequence.

59.     In addition, the scope of Ordinance 2018-01-11-0001is overly broad in its application in violation of the restrictions placed upon the use of police powers in the state of Texas. One protection afforded to families in Texas is that products deemed unhealthy and unlawful for PUP by minors, namely tobacco and alcohol, have specific exceptions carved out when provided to a minor by a parent or legal guardian. While Texas specifically authorizes the purchase of alcohol and tobacco products by a minor in the presence of their parent, guardian, spouse, or even an employer in certain circumstances, Ordinance 2018-01-11-0001 does not provide any such exceptions for persons aged eighteen (18) to twenty (20). Accordingly, Ordinance 2018-01-11-0001 creates ambiguity, uncertainty, and constitutes an unlawful extension of the police power into the private homes and family life of Texas residents in direct contravention to the principles this state holds sacred and expects retailers to follow.

## IX.
## JURY DEMAND

60.     Plaintiff hereby demands a trial by jury, in accordance with the laws and Constitution of the United States of America.

## X.

## <u>PRAYER</u>

**WHEREFORE, PREMISES CONSIDERED**, Plaintiffs, the Association of Convenience Store Retailers, Inc, South Texas Merchants Association Cooperative, Inc., and the Texas Food and Fuel Association, Inc., respectfully pray as follows:

1.      The City of San Antonio be cited to appear and answer Plaintiffs' Original Complaint and Request for Declaratory Judgment;

2.      A declaration be entered finding:

> a.  Plaintiffs' members were deprived equal protection under the laws of the United States of America and the State of Texas in the procedure and passage of Ordinance 2018-01-11-0001. Therefore, the ordinance is unconstitutional and void; and

> b.  Ordinance 2018-01-11-0001 constitutes an impermissible exercise of Defendant's police power and is void.

3.      A reasonable sum for Attorney's fees as provided by the statutes cited hereinabove, and other applicable statutes and laws of the United States which provide for the recovery of Attorney's Fees.

4.      This Honorable court grant Plaintiff such other and further relief, both general and special, legal and equitable, to which it may show itself justly entitled.


Respectfully submitted,


**GLENNY LAW FIRM**


By: _____
       Clinton M. Glenny, II

Texas Bar No. 08028670

3123 Northwest Loop 410
San Antonio, Texas 78230-5111

Telephone: (210) 340-3200

Telecopier: (210) 340-3290

Email: cg@glennylaw.com


Attorney-In-Charge for Plaintiffs

*Association of Convenience Store
Retailers, Inc., South Texas Merchants
Association Cooperative, Inc., and Texas
Food and Fuel Association, Inc.*


**OF COUNSEL:**

**CRIST LAW FIRM, PLLC**

William D. Crist

Texas Bar No. 24043614

3123 NW Loop 410

San Antonio, Texas  78230

Telephone: 210-340-3277

Telecopier: 210-372-0400

Email: bill@thecristlawfirm.com